UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THOMPSON CONSTRUCTION CO., LLC THOMPSON PROPERTIES, LLC; and MICHAEL THOMPSON | Case No. 2024 -_____ <br><br> Hon. _____ |
| Plaintiffs, | |
| v. | |
| FLAGSTAR BANK, | |
| Defendant. | |
_____/

**COMPLAINT**

Plaintiffs Thompson Construction Co., LLC; Thompson Properties, LLC; and Michael Thompson, for their complaint against defendant Flagstar Bank, state:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Thompson Construction Company, LLC ("Thompson Construction") is a Michigan limited liability company. The only member of Thompson Construction is plaintiff Michael Thompson ("Mr. Thompson"). Mr. Thompson is a citizen of the state of Michigan.

2. Plaintiff Thompson Properties, LLC ("Thompson Properties") is a Michigan limited liability company. The only member of Thompson

Properties is Mr. Thompson.  Mr. Thompson is a citizen of the state of Michigan.

3. Plaintiff Michael Thompson ("Mr. Thompson") is an individual citizen of Michigan.  (Collectively, Thompson Construction and Thompson Properties, are the "Thompson Entities", and together with Mr. Thompson, are "Plaintiffs").

4. Defendant Flagstar Bank ("Flagstar" or "Defendant") is a national banking association whose main office is located in Hicksville, New York. Therefore, Flagstar is a citizen of the state of New York.

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is diversity of citizenship between the plaintiffs and defendant and the amount in controversy in this matter exceeds $75,000 exclusive of interest and costs.

6. Flagstar conducts business in the state of Michigan and has branch offices located in the state of Michigan, in, *inter alia*, Oakland County, Michigan.

7. This Court may properly assert personal jurisdiction over Flagstar.

8. This Court is a proper venue for this action consistent with 28 U.S.C. § 1391(b).

**GENERAL ALLEGATIONS**

9. Plaintiffs incorporate all other allegations by reference.

10. Plaintiffs each had accounts with Flagstar as follows:

| Account Holder | Account Number | Type of Account |
|---|---|---|
| Thompson Construction | XXXXX4804 | Checking |
| Thompson Properties | XXXXX4448 | Checking |
| Thompson Construction | XXXXX7013 | Savings |
| Michael Thompson | XXXXX0821 | Checking |
| Michael Thompson | XXXXX6347 | Savings |
| Michael Thompson | XXXXX7631 | Savings |

11. These accounts were the subject of written agreements between the respective Thompson Entities or Mr. Thompson and Flagstar.

12. In March 2020, Mr. Thompson hired Rose Thornton to work as a real estate salesperson for one of his companies.

13. Soon after Mr. Thompson hired Rose Thornton, she ingratiated herself with Mr. Thompson and quickly gained his trust and confidence.

14. In approximately late-2021 Rose Thornton convinced Mr. Thompson to hire Michelle Signor as an accountant for the Thompson Entities.

15. In their positions with the Thompson Entities, Thornton and Signor had access to all of the checks, online banking information, bank records, and business records for those entities and were responsible for preparing the books and records for those entities.

16. Within the first year of working for the Thompson Entities, Rose Thornton had run off several of Mr. Thompson's long-time employees at

the Thompson Entities, including his long-time office manager, Deb Wise, and his long-time bookkeeper, Kelly Smith.

17. No later than May 2021, Rose Thornton had access to all of the banking records and information for Plaintiffs, including all the banking records and information for all of the Thompson Entities and for Mr. Thompson personally. When Michelle Signor was hired in late-2021 to work for the Thompson Entities, she immediately had access to all of the banking records and information for Plaintiffs, including all the banking records and information for all of the Thompson Entities and for Mr. Thompson personally.

18. Rose Thornton and/or Michelle Signor, in violation of Mr. Thompson's orders, on numerous occasions between July 2020 and April 2023:

   a. Wrote checks from Plaintiffs' accounts at Flagstar and forged Mr. Thompson's signature, or used a signature stamp without Mr. Thompson's approval, to sign checks on behalf of Plaintiffs;

   b. Made counter withdrawals of cash from Plaintiffs' accounts at Flagstar without: (i) Mr. Thompson being physically present at all; or (ii) Mr. Thompson otherwise authorizing the withdrawals;

   c. Made electronic transfers and withdrawals of funds from Plaintiffs' accounts at Flagstar without Mr. Thompson's authorization;

4

      d.      Made withdrawals through third-party applications, like Zelle, from Plaintiffs' accounts at Flagstar; and

      e.      Took other acts that may be identified during the course of this action.

19.    Thornton and/or Signor's actions described in paragraph 18 (a-e, inclusive) were taken without Mr. Thompson's consent, or the consent of any authorized agent of any of the Thompson Entities.

20.    Thornton and Signor used the Plaintiffs' bank accounts to withdraw money belonging to Plaintiffs for their own personal use and not any use that benefited Plaintiffs. In particular, Rose Thornton and/or Michelle Signor withdrew money from Plaintiffs' accounts at Flagstar by writing checks or directing electronic transfers to themselves, their family, friends, acquaintances, or to their creditors from Plaintiffs' accounts at Flagstar. Thornton and/or Signor also made counter withdrawal of cash from Plaintiffs' accounts at Flagstar, which Thornton and/or Signor used for their own personal purposes and not any purpose that benefited Plaintiffs.

21.    Rose Thornton and/or Michelle Signor concealed their unauthorized personal use of Plaintiffs' accounts at Flagstar by:

5

    a.    Intercepting paper bank account statements Flagstar mailed to Plaintiffs before they reached Mr. Thompson;

    b.    Intercepting phone calls from Flagstar intended to alert Mr. Thompson to unusual activities in Plaintiffs' accounts;

    c.    Intercepting e-mails from Flagstar intended to alert Mr. Thompson to unusual activities in Plaintiffs' accounts;

    d.    Using the internet to change the bank statements to paperless statements delivered to an e-mail address that they controlled that was not available to Mr. Thompson;

    e.    Denying Mr. Thompson online access to Plaintiffs' accounts;

    f.    Failing to record the transactions in the books and records of the respective Thompson Entities; and/or

    g.    Other acts that may be identified in the course of this action.

22.    Given that:

    a.    some of the withdrawals: were in-person withdrawals made by Thornton at a Flagstar Branch location;

    b.    Thornton was not an authorized signatory on any of Plaintiffs' accounts;

    c.    Thornton is a woman in her 40s; and

    d.    Mr. Thompson is a man in his 60s;

on information and belief Flagstar knew of the unauthorized activity in the account, knew that it was unauthorized, and aided Thornton in completing the transactions despite the fact that Flagstar knew the transactions were unauthorized.

23. Plaintiffs notified Flagstar, in writing, of the fraudulent activity in the accounts no later than May 2, 2023, which was within 30 days of Plaintiffs' discovery of the unauthorized activity.

24. On information and belief, and based on the records available to Plaintiffs at this time, Thornton stole or embezzled in excess of $298,000.00 from Plaintiffs' accounts at Flagstar.

## COUNT I
### Breach Of Contract
### Account Agreements

25. Plaintiffs incorporate all other allegations by reference.

26. Plaintiffs and Flagstar entered into a valid and binding contract in the form of the account agreements.

27. Plaintiffs performed all of their obligations under the account agreements.

28. Flagstar breached the account agreements by:

    a. Cashing checks with forged signatures that were not authorized by Mr. Thompson;

    b.    Cashing checks that were signed with a rubber stamp that were not authorized by Mr. Thompson;

    c.    Allowing counter withdrawals of cash from the checking accounts by Thornton and/or Signor without Mr. Thompson's consent or authorization;

    d.    Allowing internet transfers and/or withdrawals of money out of the accounts by Thornton and/or Signor without Mr. Thompson's consent or authorization;

    e.    Allowing telephone transfers and/or withdrawal of money out of the accounts by Thornton or Signor without Mr. Thompson's consent or authorization;

    f.    Allowing third-party applications, like Zelle, to withdraw money from Plaintiffs' accounts without Mr. Thompson's consent or authorization.

    g.    Other acts and omissions that may be identified during the course of this action.

29.    Flagstar's breach of its obligations under the checking account agreements has caused Plaintiffs to suffer financial losses.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Flagstar; (2) award them the damages they have

8

suffered, including consequential damages; (3) award them interest, costs, and attorney fees as provided by statute, rule, regulation, contract, at law, or in equity; and (4) award them any other relief this Court deems appropriate, just and equitable.

## COUNT II
### Concealing or Aiding in the Concealment of Stolen, Embezzled, or Converted Property

30. Plaintiffs incorporate all other allegations by reference.

31. Mr. Thompson was the only authorized signatory on any of Plaintiff's accounts identified in this Complaint.

32. Mr. Thompson is an adult male in his 60s

33. Rose Thornton is an adult female in her 40s.

34. Anyone observing Rose Thornton and checking the authorized signatories on the accounts would have known that Rose Thornton was not an authorized signatory on any of Plaintiffs' accounts at Flagstar.

35. Nevertheless, Thornton was allowed to make in-person withdrawals from Plaintiffs' accounts at Flagstar.

36. Therefore, on information and belief, agents of Flagstar acted in concert with Rose Thornton and/or Michelle Signor to conceal or aid in the concealment of solen, embezzled, or converted property by helping Thornton and/or Signor:

9

    a.       Withdraw money from Plaintiffs' accounts at Flagstar;

    b.       Make and allow the withdrawals without Mr. Thompson's presence, consent, or permission;

    c.       Cover-up the withdrawals so that Mr. Thompson would not learn about the unauthorized activity; and

    d.       Take other acts and omissions that may be identified during the course of this action.

37. On information and belief, Flagstar knew that Thornton and Signor were stealing, converting, or embezzling Plaintiffs' money.

38. Plaintiffs were damaged as a result of the stealing, conversion or embezzlement because their money was taken and not returned.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Flagstar; (2) award them any damages they have incurred in this action including treble damages, costs, and reasonable attorney fees as allowed under MCL §600.2919a; (3) award them interest, costs, and attorney fees as provided by any other statute, rule, regulation, contract, at law, or in equity; and (4) award them any other relief this Court deems appropriate, just, and equitable.

### COUNT IV
### Negligence – Forged Checks - Breach Of Statutory Duties

39. Plaintiffs incorporate all other allegations by reference.

40. Defendant had a duty to exercise ordinary care in paying checks drawn on Plaintiffs' accounts at Flagstar.  MCL 440.3406.

41. Defendant breached its duty with respect to checks written from the accounts identified above by:

    a. Failing to adequately examine the maker's signature;

    b. Paying the checks despite Mr. Thompson's signature being forged as the maker of the instrument; and

    c. Other acts and omissions that may be identified during the course of this action.

42. Defendant did not act in good faith by paying the instruments with the forged signatures.

43. Defendant had actual knowledge that the signatures were forged.

44. Defendant's breach of its statutory duties in paying the checks with forged maker signatures directly and proximately caused financial loss for Plaintiffs.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Flagstar; (2) award them any and all damages they have incurred as a direct and proximate result of Flagstar's negligent conduct; (3) award them interest, costs, and attorney fees as provided by any other statute,

rule, regulation, contract, at law, or in equity; and (4) award them any other relief this Court deems appropriate, just, and equitable.

## COUNT V
## Negligence – Unauthorized Transfers – Breach Of Statutory Duties

45. Plaintiffs incorporate all other allegations by reference.

46. Defendant had a duty to act in a commercially reasonable manner in receiving payment orders from Plaintiffs to ensure that the payment orders were authorized by Plaintiffs. MCL 440.4703.

47. Defendant breached its duty with respect to payment orders made from the accounts identified above by:

   a. Making payment on payment orders that were not authorized by Plaintiffs;

   b. Making payment on payment orders that did not comport with any security procedure agreed to by Plaintiffs and Defendant;

   c. Making payment on payment orders that were not authorized by Plaintiffs through a security procedure that was not commercially reasonable; and

   d. Other acts or omissions that may be identified during the course of this action.

48. Defendant did not act in good faith by paying the payment orders.

49. Defendant had actual knowledge that the payment orders were not authorized by Plaintiffs.

50. Defendant's breach of its statutory duties in paying the payment orders without authorization from Plaintiffs caused financial loss for Plaintiffs.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Flagstar; (2) award them any and all damages they have incurred as a direct and proximate result of Flagstar's negligent conduct; (3) award them interest, costs, and attorney fees as provided by any other statute, rule, regulation, contract, at law, or in equity; and (4) award them any other relief this Court deems appropriate, just, and equitable.

## COUNT VI
## Common Law Negligence

51. Plaintiffs incorporate all other allegations by reference.

52. Defendant owed Plaintiff a duty to exercise ordinary care in allowing withdrawals of money from Plaintiffs' accounts at Flagstar.

53. Defendant breached this duty by:

    a. Paying checks from Plaintiffs' accounts at Flagstar on which Thornton and/or Signor forged Mr. Thompson's signature or used a signature stamp without Mr. Thompson's approval to sign checks on behalf of Plaintiffs.

    b.    Allowing counter withdrawals of cash from Plaintiffs' accounts at Flagstar without: (i) Mr. Thompson being physically present at all; or (ii) Mr. Thompson otherwise authorizing the withdrawals.

    c.    Allowing electronic transfers and withdrawals of funds from Plaintiffs' accounts at Flagstar without Mr. Thompson's authorization.

    d.    Allowing withdrawals through third-party applications, like Zelle, from Plaintiffs' accounts at Flagstar; and

    e.    Taking other acts that may be identified during the course of this action.

54. Defendant's breach of its duty was the direct and proximate cause of Plaintiffs financial losses.

55. Plaintiffs have suffered financial losses in the form of lost money from the accounts.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Flagstar; (2) award them any and all damages they have incurred as a direct and proximate result of Flagstar's negligent conduct; (3) award them interest, costs, and attorney fees as provided by any other statute, rule, regulation, contract, at law, or in equity; and (4) award them any other relief this Court deems appropriate, just, and equitable.

Dated: April 30, 2024	Respectfully Submitted:

**ALTIOR LAW, P.C.**

/s/ Stephen T. McKenney
Kenneth F. Neuman (P39429)
Stephen T. McKenney (P65673)
Attorneys for Plaintiffs
401 S. Old Woodward, Suite 460
Birmingham, MI 48009
(248) 594-5252
kneuman@altiorlaw.com
smckenney@altiorlaw.com